UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MATTIE SPITZ, individually and on behalf of
all others similarly situated,

                Plaintiff,                  **MEMORANDUM & ORDER**
                                                                   23-CV-7853 (PKC) (CLP)

      - against -

CAINE & WEINER COMPANY, INC.,

                Defendant.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Mattie Spitz ("Plaintiff") filed this putative class action in federal court on October 20, 2023, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. On October 23, 2023, the Court ordered Plaintiff to show cause why this case should not be dismissed because Plaintiff had not alleged an injury-in-fact sufficient to establish federal jurisdiction. Plaintiff responded to the order to show cause on November 6, 2023. For the reasons explained below, this case is dismissed for lack of jurisdiction.

## FACTUAL BACKGROUND[1]

       Plaintiff alleges that she incurred a debt with CCI Credit Management, Ltd. ("CCI"), a non-party to the instant lawsuit, and CCI contracted with Defendant Caine & Weiner Company, Inc. ("Defendant") "for the purpose of collecting this debt." (Complaint ("Compl."), Dkt. 1 ¶¶ 21, 24.)

---

[1] The following facts are drawn from the allegations in Plaintiff's complaint. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) ("Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." (internal quotation marks omitted) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998))).

Thereafter, Plaintiff received a collection notice from Defendant indicating that Plaintiff owed two different balances, with no explanation for the difference, as follows:

| | |
|---|---:|
| As of 10-18-22, you owed: | $1,232.38 |
| Between 10-18-22 and today: | |
|     You were charged this amount in interest: | + $0.00 |
|     You were charged this amount in fees: | + $0.00 |
|     You paid or were credited this amount toward the debt: | − $0.00 |
| Total amount of the debt now: | $1,245.49 |

(*Id.* ¶¶ 26–28.)  Plaintiff alleges that "[the] discrepancy . . . [left] Plaintiff confused an[d] unable to pay [the] debt" and that Defendant's letter was an "attempt to unlawfully collect on fees in excess of the lawful amount," in violation of the FDCPA.  (*Id.* ¶¶ 35, 42.)

After Plaintiff received Defendant's letter, "[i]n reliance on Defendant's conduct, Plaintiff expended time and money" in three ways: first, "in an effort to mitigate the risk of future financial harm in the form of dominion and control over her funds"; second, "in an effort to mitigate the risk of future financial and reputational harm in the form of debt collection informational furnishment, and ultimate dissemination, to third parties"; and third, "to determine how to respond to Defendant's Letter."  (*See id.* ¶¶ 60–62.)

As a consequence, Plaintiff alleges, she suffered "emotional harms including, but not limited to, increased heartrate, difficulty with sleep, anxiety, and stress associated with the fear of a debt collector attempting to collect more than the legally authorized amount"; a "frustrated . . . ability to intelligently respond to Defendant's Letter"; "distress, embarrassment, humiliation, [and] disruption"; and "other damages and consequences because Plaintiff was unaware as to why Defendant included an itemized breakdown with no information as to the fees and interest charged or to payments and credits made."  (*Id.* ¶¶ 52, 56–57.)  Based on these harms, Plaintiff alleges that she suffered injury that is analogous to four traditional torts: "fraud, negligent infliction of emotional distress, invasion of privacy, and nuisance."  (*See id.* ¶ 50.)

## PROCEDURAL HISTORY

On October 23, 2023, the Court issued an Order to Show Cause ("OTSC") that directed Plaintiff, "[i]n light of the Supreme Court's decision" in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), to "file a letter showing cause why this case should not be dismissed for lack of standing." (10/23/2023 OTSC.) On November 6, 2023, Plaintiff filed a response. (OTSC Response ("OTSC Resp."), Dkt. 7.) In her response, Plaintiff argued that her complaint plausibly alleges injury-in-fact because

> [Plaintiff] was confused by the dueling debts in the [collection] letter and, as a result of this confusion, failed to take any action on the debt. . . . [T]aking into consideration the dynamic nature of the debt, Plaintiff's confusion and resulting inaction on the debt has subjected her to further fee accruals on the debt. This constitutes a tangible pecuniary harm . . . . While perhaps not of the shocking variety that would make allegations of emotional distress an all but absolute certainty, Plaintiff's allegations nevertheless set forth the basis for her emotional distress and humiliation . . . .

(*Id.* at ECF 3, 4, 6.)[2]

## LEGAL STANDARD

"[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). This principle is rooted in Article III of the Constitution, which "confines the federal judicial power to . . . 'Cases' and 'Controversies.'" *TransUnion*, 594 U.S. at 423. A case or controversy exists only where a plaintiff has suffered "an injury in fact that is concrete, particularized, and actual or imminent." *Id.* Where a plaintiff lacks an injury-in-fact, the plaintiff lacks standing, and a federal court lacks jurisdiction to entertain the plaintiff's claims. *Id.*

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Before 2021, many courts assumed that when Congress created a statutory cause of action, a violation of that statute was sufficient to create an injury-in-fact for purposes of establishing Article III standing. *See, e.g.*, *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018). But in 2021, the Supreme Court decided *TransUnion*, which clarified that, while "Congress may create causes of action for plaintiffs to sue defendants[,] under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427. Thus, even where a defendant violates a statute such as the FDCPA, the plaintiff has not necessarily suffered an injury-in-fact sufficient to establish Article III standing. *See, e.g.*, *id.*; *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69 (2d Cir. 2023) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 139 (E.D.N.Y. 2021) ("Plaintiff must have suffered real adverse effects beyond the 'procedural violation' of the statute.").

In the FDCPA context, a harm that bears "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts" is sufficiently concrete. *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 424). But if the plaintiff alleges "[n]o concrete harm," the plaintiff has "no standing," and a federal court lacks jurisdiction to hear the plaintiff's claims. *TransUnion*, 594 U.S. at 417.

"[T]he party invoking federal jurisdiction . . . bears the burden of demonstrating . . . standing." *Id.* at 430–31. "[T]he plaintiff must clearly allege facts" that demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks, alteration, and citation omitted).

4

**DISCUSSION**

Plaintiff does not clearly allege facts that demonstrate standing to pursue her claims in federal court, and the Court consequently lacks jurisdiction over this action. First, Plaintiff's mere allegations of wasted time, resources, and efforts upon receipt of the collection letter do not establish injury-in-fact. *See, e.g.*, *Cavazzini*, 574 F. Supp. 3d at 143–44 (collecting cases). Although Plaintiff alleges that Defendant's letter caused her to expend "time and money" in "an effort" to "mitigate the *risk* of future financial and reputational harm," (*see* Compl., Dkt. 1 ¶¶ 60–61 (emphasis added)), Plaintiff does not allege what mitigation "efforts" she undertook, and risk that "[is] not alleged to have materialized, cannot . . . form the basis of Article III standing." *Maddox*, 19 F.4th at 65. Plaintiff's allegations that she wasted money "determin[ing] how to respond to Defendant's Letter" are similarly deficient, as the mere risk of "incurring fees by hiring an attorney . . . does not support standing because the burdens of bringing a lawsuit cannot be the sole basis for standing." (Compl., Dkt. 1 ¶ 62); *Cavazzini*, 574 F. Supp. 3d at 144. And as for Plaintiff's allegations of wasted time, such allegations alone are "insufficient to establish standing unless [they are] inextricably linked to a [separate] concrete, tangible injury." *Grinblat v. Frontline Asset Strategies, LLC*, No. 22-CV-4467 (NSR), 2023 WL 5002474, at *3 (S.D.N.Y. Aug. 4, 2023) (citing *Cavazzini*, 574 F. Supp. 3d at 143–44). Plaintiff points to no "concrete, tangible" consequence of her alleged expenditure of time, simply alleging that she expended it. (*See, e.g.*, Compl., Dkt. 1 ¶ 62.) Her allegations are conclusory.

Second, the emotional harms that Plaintiff alleges she suffered are also insufficiently concrete for Article III standing. Plaintiff's allegations that she was "confused an[d] unable to pay [the] debt" and suffered "increased heartrate, difficulty with sleep, anxiety, and stress associated with . . . fear," (Compl., Dkt. 1 ¶¶ 34, 52), are virtually identical to those that have been rejected in other similar FDCPA cases. *E.g.*, *Nojovits v. Ceteris Portfolio Servs., LLC*, No. 22-CV-2833

(PKC) (CLP), 2022 WL 2047179, at *2 (E.D.N.Y. June 7, 2022) (finding no standing where plaintiff alleged "fear, anxiety, stress, increased heartrate, and difficulty with sleep" from receiving debt collection letter); *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-CV-1156 (PKC) (CLP), 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (finding no standing where plaintiff suffered "emotional harm").

Although Plaintiff claims that her allegations are different from those rejected in *Nojovits* and *Wolkenfeld* because she "has provided the allegations describing in detail the emotional harm suffered that was missing in *Wolkenfeld* as well as the basis for her emotional distress that was missing in *Nojovits*," the mere recitation that Plaintiff's allegations are distinct does not make it so. (OTSC Resp., Dkt. 7, at ECF 6.) "Plaintiff misses the point of what makes these allegations 'perfunctory'—namely, that Plaintiff offers no explanation for why the challenged conduct would cause such an extreme reaction[.]" *Nojovits*, 2022 WL 2047179, at *2; *see also Maddox*, 19 F.4th at 66 ("[An] allegation of emotional distress . . . wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."). Here, the assertion that Plaintiff "was unaware as to why Defendant included an itemized breakdown with no information as to the fees and interest charged or to payment and credits made" still does not establish a basis for the "fear," "anxiety," and "stress" Plaintiff purportedly suffered, other than in a conclusory manner.[3] (OTSC Resp., Dkt. 7, at ECF 6.) As the Honorable Brian M. Cogan noted in *Friedman v. Cavalry Portfolio Services, LLC*:

> Nor are "fear, anxiety, stress, increased heartrate, and difficulty with sleep" injuries-in-fact, at least when they are asserted in the conclusory manner of these complaints. The reason these allegations can be repeated across cases in cookie-cutter complaints is that they don't really mean anything and can rarely be

---

[3] This is particularly so given that the letter Plaintiff received itself provided instructions for remediating any confusion, by disputing the debt with Defendant in writing or online. (Compl. Ex. A, Dkt. 1-1, at ECF 2.)

6

disproven. Did their heart rate go up for more than a second? Did either plaintiff actually measure his heart rate? Did either plaintiff have to see a doctor? Did they have to get a prescription for a sleeping pill? The most likely answers to these questions are strongly suggestive that there was no injury in fact; at the very least, the vagueness of the allegations "without some further factual enhancement . . . stop short of the line between possibility and plausibility[.]"

Nos. 23-CV-304 (BMC), 23-CV-3212 (BMC), --- F. Supp. 3d ----, 2023 WL 3708996, at *3 (E.D.N.Y. 2023) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)); *see id.* at *1 (finding no standing where plaintiff allegedly "suffered emotional and physical harm . . . including . . . fear, anxiety, stress, increased heartrate, and difficulty with sleep"). Plaintiff's complaint does not avoid the "vagueness of [such] allegations." *See id.* at *3.

Third, Plaintiff offers no support for her allegation that Defendant's letter was analogous to one of four "traditional torts"—fraud, negligent infliction of emotional distress, invasion of privacy, or nuisance, (Compl., Dkt. 1 ¶ 50)—as is suggestive of standing under *TransUnion*. She "has not attempted to explain how the particular allegations in this case plausibly allege all of the elements of any of those torts, let alone do so adequately enough to convince the Court that she has standing, and thus Plaintiff has not carried her burden of demonstrating [Article III] standing."[4] *Nojovits*, 2022 WL 2047179, at *3 (citing *TransUnion*, 594 U.S. at 430).

Plaintiff first asserts that Defendant's letter is analogous to fraud. (Compl., Dkt. 1 ¶ 50.) Beyond Plaintiff's conclusory allegations, *see Nojovits*, 2022 WL 2047179, at *2, this analogy fails for two reasons. First, "merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to

---

[4] If Plaintiff so chooses, she may pursue her claims in state court, which has jurisdiction to enforce the FDCPA and "[is] not bound to adhere to federal standing requirements." *Maddox*, 19 F.4th at 66 & n.4 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)); *see also Cavazzini*, 574 F. Supp. 3d at 145 (remanding plaintiff's FDCPA and state law claims to state court for lack of subject matter jurisdiction).

fraudulent . . . misrepresentation[.]" *Friedman*, --- F. Supp. 3d ----, 2023 WL 3708996, at *3 (internal quotation marks omitted) (quoting *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021)). Second, even if it could, "[c]laims sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Under this heightened pleading standard, "the plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id.* (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Plaintiff's complaint, which merely states, "[a]s it relates to this case, the common-law analogue[] [is] to the traditional tort[] of fraud," (Compl., Dkt. 1 ¶ 50), fails to satisfy this heightened standard. *See Olson*, 29 F.4th at 71; *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977 (MKB), 2021 WL 2010398, at *10 (E.D.N.Y. Jan. 29, 2021) ("Plaintiff has not pled facts, beyond speculation and conclusory allegations, that give rise to a strong inference of fraudulent intent.").

Plaintiff next attempts to analogize to negligent infliction of emotional distress, but "Plaintiff's bald assertion that Plaintiff's harms 'have a close relationship to . . . the tort[] of . . . negligent infliction of emotional distress . . . []' does not make it so." *Nojovits*, 2022 WL 2047179, at *3. "Th[is] purported analogue[] ha[s] been asserted and rejected in numerous nearly identical FDCPA cases." *Id.* Plaintiff's conclusory allegations do not plausibly allege that she experienced conduct analogous to negligent infliction of emotional distress, let alone that such an analogue could establish Article III standing for an FDCPA claim. (*See* Compl., Dkt. 1 ¶ 50.)

8

With respect to invasion of privacy, Plaintiff does not explain the basis for this purported analogy. As a preliminary matter, "New York does not have a common-law right against invasion of privacy." *Devitt v. Portfolio Recovery Assocs.*, No. 21-CV-5657 (ARR) (ARL), 2022 WL 1460278, at *6 (E.D.N.Y. May 9, 2022). "[T]he traditional tort," however, "comprises four separate privacy causes of action: public disclosure of private facts, false light, intrusion upon seclusion, and appropriation of likeness." *Id.* Although Plaintiff does not specify the exact cause of action at issue, she fails to state a claim for the two closest ones: public disclosure of private facts and intrusion upon seclusion. *See id.* (focusing legal analysis on public disclosure of private facts, where plaintiff simply alleged an "invasion of privacy," as "the tort closest to the injuries pleaded in plaintiff's complaint").

Regarding public disclosure of private facts, Plaintiff alleges that she sought to "mitigate the risk of future financial and reputational harm in the form of debt collection informational furnishment, and ultimate dissemination, to third parties." (*See* Compl., Dkt. 1 ¶ 61.) However, Plaintiff does not allege that such risk materialized, let alone that Defendant caused it.[5] *See Maddox*, 19 F.4th at 65.

As for intrusion upon seclusion, it "requires the *intrusion* to have caused an injury, not a subsequent disclosure of the information gained from the intrusion." *Devitt*, 2022 WL 1460278, at *6 n.10. Here, although Plaintiff alleges that Defendant violated the FDCPA "by *misrepresenting the amount owed* of the alleged debt," (Compl., Dkt. 1 ¶ 37 (emphasis added)),

---

[5] At most, Plaintiff alleges that non-party CCI provided Plaintiff's contact and debt information to Defendant. (*See* Compl., Dkt. 1 ¶ 24.) "[S]haring information about a debtor [such as Plaintiff] with a third-party mailing vendor [such as Defendant] is not analogous to an invasion of privacy." *Devitt*, 2022 WL 1460278, at *6; *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 64–65 (E.D.N.Y. July 21, 2021) (holding that sharing information with a third party debt collector was not analogous to an invasion of privacy because it was unlikely to constitute a "matter publicized . . . of a kind that . . . would be highly offensive to a reasonable person").

9

she does not allege that the act of receiving a debt collection letter itself harmed her. (*See* Compl., Dkt. 1 ¶¶ 37, 39, 42–43, 46); *cf. Clarke v. McCabe, Weisburg & Conway, LLC*, No. 22-CV-3289 (RPK) (PK), 2022 WL 3030347, at *3 (E.D.N.Y. Aug. 1, 2022) ("[P]laintiff's objection to the mailing is not that it was unwanted or unauthorized, but rather that it omitted required information [such as the correct amount of the debt, interest, or fees] that plaintiff desired[.]"). Nor does Plaintiff allege that the letter she received would be "highly offensive to a reasonable person," as is required to state a claim for intrusion upon seclusion. *Salazar v. Nat'l Basketball Ass'n*, No. 22-CV-7935 (JLR), --- F. Supp. 3d ----, 2023 WL 5016968, at *6 (S.D.N.Y. 2023) (citing Restatement (Second) of Torts § 652B (1977)). As with her other allegations, Plaintiff's attempted analogy to intrusion upon seclusion is wholly conclusory. (*See* Compl., Dkt. 1 ¶ 50.)

Plaintiff finally tries to analogize to nuisance. (*Id.*) The Court reiterates that Plaintiff, who does not allege that Defendant's conduct was unreasonable or physically intrusive as to Plaintiff's property, has failed to allege plausibly the elements of such a claim. *Nojovits*, 2022 WL 2047179, at *3; *see Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996) ("The elements of a private nuisance cause of action . . . are: '(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act.'"); *see also Ciccone v. Cavalry Portfolio Servs., LLC*, Nos. 21-CV-2428 (JS) (JMW), 21-CV-3764 (JS) (AYS), 2021 WL 5591725, at *4 (E.D.N.Y. Nov. 29, 2021) (noting that when examining whether the type of harm alleged is well established as actionable at common law, "the Court is not demanding an exact duplicate, but rather looking for similarities on which to hang its hat. Plaintiffs provide none").

Lastly, Plaintiff does not persuasively argue that she faces the threat of "dynamic increasing fees" that "constitute[] a tangible pecuniary harm." (OTSC Resp., Dkt. 7, at ECF 3–4.)

10

Plaintiff's complaint alleges that she was subjected to "$0.00" in fees and "$0.00" in interest. (Compl., Dkt. 1 ¶ 28.) Plaintiff's response to the OTSC, which raises the prospect of "dynamic increasing fees" for the first time, does not explain how fees of $0.00 and interest of $0.00 are a "tangible pecuniary harm." *See Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (holding that plaintiff failed to allege standing where her "alleged harms [were] not expenses, costs, any specific lost credit opportunity, or specific emotional injuries"); *Nojovits*, 2022 WL 2047179, at *3 (rejecting "dynamic increasing fees" as a basis for standing where "nowhere [in the collection letter] mention[ed] additional fees for delayed payments"). Although Plaintiff asserts that "it is reasonable to draw the inference that Plaintiff has been subjected to fee accruals in the interim since the letter was sent and will continue to be subjected to them in the future," the Court disagrees, given that the collection letter is silent as to any continuing fees. (*See* OTSC Resp., Dkt. 7, at ECF 4; Compl. Ex. A, Dkt. 1-1, at ECF 2); *Nojovits*, 2022 WL 2047179, at *3. "Rather, the complaint leaves the Court to hypothesize how [Defendant's] alleged mistake . . . caused [P]laintiff's alleged injuries. Without allegations linking [Defendant's] actions to [P]laintiff's harm, the complaint contains nothing more than a vague procedural violation followed by an 'unadorned, the-defendant-unlawfully-harmed-me accusation.'"[6] *Gross*, 607 F. Supp. 3d at 273.

---

[6] Further, "even if the debt were increasing because of Plaintiff's inaction, the Court would not find that Plaintiff's decision not to pay the debt would confer standing. Doing so would allow a plaintiff to manufacture standing through a self-inflicted injury even when the plaintiff is well aware of her debt obligation." *Nojovits*, 2022 WL 2047179, at *3. Plaintiff offers no reason to depart from that approach here. (OTSC Resp., Dkt. 7, at ECF 5.)

11

## CONCLUSION

For the reasons explained above, this case is dismissed for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 5, 2024
       Brooklyn, New York